**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**GLENN KASPER**                                                                          **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 3:15cv613-WHB-JCG**

**THE BOARD OF SUPERVISORS OF
LAUDERDALE COUNTY, MS et al.**                                         **DEFENDANTS**

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants, Jacob Mathis, Andy Matuszewski, Ruston Russell, [Sheriff]

William Sollie, Wesley Stephens, and Dylan Anderson, in their individual capacities,

(collectively "Defendants"), and file this their Memorandum Brief in Support of their Motion for

Summary Judgment, and in support thereof, respectfully show unto the Court as follows:

### A. <u>STANDARD OF REVIEW</u>

Summary judgment is mandatory "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994)

(quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). Summary Judgment. . . shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." <u>Little</u>, 37 F.3d at 1075

(quoting Fed.R.Civ.P. 56©).

### B. <u>THE PLAINTIFF'S CLAIMS</u>

On August 21, 2015, Plaintiff filed this lawsuit relative to his an encounter which he had

with certain law enforcement officers in Lauderdale County on May 24, 2014.  <u>See</u> ECF No. 1.

Plaintiff filed an Amended Complaint on December 21, 2015.  See ECF No. 11.  At the outset, it is appropriate to note that in paragraph 5 of his original and his Amended Complaint, Plaintiff's counsel has included a typographical error which indicates that Plaintiff's encounter with law enforcement occurred on May 24, 2015; more specifically, Plaintiff alleges that on or about May 24, 2015, he allegedly was encountered "by Lauderdale County Sheriff's Department deputies at the intersection of Allen Swamp Road and Pine Springs Road."  See ECF No. 11, para. 5. However, it is clear from the remainder of the Complaint and its supporting documents that the encounter actually occurred on May 24, 2014.  For instance in paragraph 8, Plaintiff alleges that on January 13, 2015, he appeared in Justice Court regarding charges stemming from the encounter.  He confirms that he was convicted of 2 counts of disorderly conduct related to the encounter and attached the abstracts of such Judgments as a part of Composite Exhibit "B" to his Amended Complaint.[1]  Those Abstracts reflect that the "Date of Violation" was May 24, 2014. Then in paragraph 11, Plaintiff alleges that "on May 25, 2014 ... as a result of the Defendants action, he was required to pay a towing fee..." and attached a tow bill dated May 25, 2014 as Exhibit ""C" to his Amended Complaint.  He also attached as Exhibit "A" to his Amended Complaint, the Statement of an alleged witness, who recalls that the incident occurred during "Memorial Day weekend in 2014."  It is undisputed that the date of Plaintiff's encounter with law enforcement officers was May 24, 2014.

As stated, Plaintiff alleges that on or about May 24, 2015, he allegedly was encountered "by Lauderdale County Sheriff's Department deputies at the intersection of Allen Swamp Road and Pine Springs Road." According to the complaint, Plaintiff observed defendant Deputy Russell, but "no signal, hand or otherwise, was given indicting that [Plaintiff] should stop beyond

---

[1]Id. at Exh. "B", pages 23-24 of 27.

compliance with rules of the road." After briefly stopping at the intersection, Plaintiff allegedly

had his driver's side window "smashed by a Lauderdale County Deputy."

Plaintiff also claims that there was "no probable cause for [his] arrest," and that he was

"grabbed, pulled, by several Deputies, and removed from his vehicle head first."  He alleges

further that "Lauderdale County Deputies immediately continued to use excessive force by

ripping Plaintiff's shirt completely off and repeatedly assaulting him, specifically smashing his

head into the pavement." Plaintiff also contends that he was tased by the deputy and placed into

the deputy's patrol car. Thereafter, Plaintiff maintains that he was transported to the "Lauderdale

County Detention Center," where he allegedly was "immediately strip searched and the two taser

barbs were removed from this person." Plaintiff subsequently was charged with several

misdemeanor violations, and the court later dismissed all charges "except Counts I and II of

Disorderly Conduct." He asserts that he sustained loss of income as a result of the incident.

In his Amended Complaint, Plaintiff asserts numerous claims under state and federal law

including:

| | |
|---|---|
| Count 1: | Constitutional and Civil Rights Pursuant to 42 U.S.C. Sections 1983 and 1988; |
| Count 2: | Unconstitutional Prior Restraint Pursuant to 42 U.S.C. Sections 1983 and 1988 |
| Count 3: | Violation of to 42 U.S.C. Section 1983: Arrest |
| Count 4: | Violation of to 42 U.S.C. Section 1983: Detention and Confinement |
| Count 5: | Violation of to 42 U.S.C. Section 1983: Strip Search |
| Count 6: | Malicious Prosecution |
| Count 7: | False Arrest and False Imprisonment |
| Count 8: | Assault and Battery |
| Count 9: | Intentional Infliction of Emotional Distress |
| Count 10: | Violation of to 42 U.S.C. Section 1983, Deprivation of Property Without Due Process of Law |
| Count 11: | Conversion |
| Count 12: | Violation of Civil Rights Pursuant to Title 42 U.S.C. Section 1983, (Failure to Implement Appropriate Policies, Customs, and Practices) |

Plaintiff seeks unspecified compensatory damages, injunctive relief, attorney's fees and expenses.

The Defendants filed their Answer denying all liability on January 20, 2016.  <u>See</u> ECF No. 21.  In the Answer, the Defendants asserted affirmatively that they are entitled to dismissal based on, among other things, qualified immunity, the applicable statute of limitations, and various provisions of the Mississippi Tort Claims Act.  <u>See</u> ECF No. 21, Tenth, Eleventh, Nineteenth, Twenty-Sixth, Twenty-Eighth Twenty-Ninth, Thirty-Second, Thirty-Third Defenses at 2-3, 11, 12, 13.  In the Answer, the Defendants also asserted affirmatively that the Plaintiff's claims constitute an impermissible collateral attack on his 2015 convictions, including for disorderly conduct, stemming from his encounter with law enforcement officers on May 24, 2014 and are therefore barred pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed. 2d 383 (1994).  <u>See</u> ECF No. 21, Thirty-Fourth Defenses at 13.

The individual Defendants now move for summary judgment.  In support of their motion for summary judgment, the Defendants rely on the following exhibits: Exhibit "A": Affidavit of Sheriff William D. Sollie, which includes the following exhibits: (1). Exhibit "1":  Lauderdale County Sheriff's Department Policy No. 4.03 entitled "Roadside Safety Checkpoints"; (2). Exhibit "2": May 24, 2014 Authorization for Roadside Safety Checkpoint; (2). Exhibit "3": May 24, 2014 Report of Roadside Safety Checkpoint; (4). Exhibit "4": Lauderdale County Sheriff's Department Incident Report dated May 24, 2014 relative to arrest of Glenn Dell Kasper on Allen Swamp/Pine Springs Road; and (5). Exhibit "5": Arrest Slip dated May 24, 2014 (1949 hours) relative to arrest of Glenn Dell Kasper on Allen Swamp Road.  The Defendants assert that there is no genuine issue as to any material fact and they are entitled to summary judgment regarding the entirety of Plaintiff's claims.

## C. <u>ARGUMENT</u>

The Plaintiff  has have sued the defendants pursuant to 42 U.S.C. § 1983.  The two essential elements of a § 1983 claim are: (1) the conduct complained of was committed by a person acting under the color of State law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the constitution or laws of the United States.  <u>Parratt v. Taylor</u>, 451 US 527 (1980); <u>Deshaney v. Winnebago County Dept. Of Social Services</u>, 489 U.S. 1989 (1999).  The focus of  § 1983 is on the misuse of power, possessed by virtue of state law and made possible only because the wrong doer is clothed with the authority of state law. <u>Johnson v. Lucas</u>, 786 F.2d 1254, 1257 (5th Cir. 1986); <u>Rankin v. City of Wichita Falls, Texas</u>, 762 F.2d 444, 448 (5th Cir. 1985).  Section 1983 provides remedies for Constitutional violations and not ordinary torts.  Just because a government official is alleged to have committed a tortious act that violated the constitution, that alone does not make it a constitutional tort.  <u>Daniels v. Williams</u>, 474 U.S. 327, 329-336, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).  The actions complained of must be of such a nature to raise the ordinary tort to the level of a constitutional tort.  <u>Love v. King</u>, 784 F.2d 708, 712 (5th Cir. 1986).  Negligence claims are not actionable. <u>Daniels v. Williams</u>, 474 US 327, 333 (1986).  Remedy for a violation of a duty of care must be sought in state court under traditional tort law principles.  <u>Baker v. McCollon</u>, 443 US 137, 146 (1979).

Additionally, due to the threat that civil law suits against public officials will interfere with their ability to perform their duties, the Plaintiff can recover only if he is able to overcome the Defendants grant of qualified immunity.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 806 (1982). While the statutory language of § 1983 does not expressly provide for an immunity defense, courts have consistently recognized some form of immunity when government officials are sued

for damages.  Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732 (1982)).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.  The defendant government official must have actually engaged in some violation of the plaintiff's federally protected rights to be held liable:  "Personal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

Furthermore, "supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).  If a defendant violates a federally protected right, the Court must determine whether the defendant's conduct was objectively reasonable measured by the law as it existed at the time of the conduct.  See Salas v. Carpenter, 980 F.2d 299, 310 (5th Cir. 1992) ("Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable").  In other words, qualified immunity protects public officials, such as the individual Defendants herein, even if the official has violated a clearly established right if the official's conduct was objectively reasonable.  Wilson v. Layne, 526 U.S. 603, 199 S.Ct. 1692, 1699 (1999).  See also Anderson v. Creighton, 483 U.S. at 641; Harlow v. Fitzgerald, 457 U.S. at 818.

The Amended Complaint contains conclusory allegations and does not allege with particularity (or otherwise) the facts underlying the allegations against any specific Defendant. Rather, Plaintiff makes general allegations against all of the Defendants.

As reflected by the Affidavit of Sheriff Sollie, Plaintiff was indeed arrested on or about May 24, 2014; the incident occurred when Plaintiff failed to stop at a properly conducted and authorized law enforcement safety checkpoint.[2]  See Exh. "A", paras. 3-7.  Plaintiff refused to stop his automobile at the checkpoint and accelerated it in a manner that almost ran over one or more of the officers participating in the safety checkpoint.  Id., para. 4-6 (including Exhibit "4" thereto (officer statements)).  As a result of his misconduct in that regard, Plaintiff was arrested and taken into custody utilizing an amount of force reasonable and necessary under the circumstances.  Id.  Mr. Kasper was charged with several misdemeanor offenses, which resulted two convictions for disorderly conduct, which still stand.  Id.  As set forth above, Plaintiff asserts in paragraph 8 of his Amended Complaint that on January 13, 2015, he appeared in Justice Court regarding charges stemming from the encounter, and that he was convicted of 2 counts of disorderly conduct; he attached the abstracts of such Judgments as a part of Composite Exhibit "B" to his Amended Complaint.[3]

Sheriff Sollie did not personally participate in the roadside safety checkpoint on May 24, 2014.  See Exh. "A", para. 1.  He also did not personally participate in the arrest of Mr. Kasper on that date.  Id.  Sheriff Sollie was not personally involved with Mr. Kasper in any way on May 24, 2014.  Id., para. 8.  He was not present at the scene of his arrest and did not participate in any use of force with him that day.  Id.  He also was not present when Mr. Kasper was booked into the Lauderdale County Detention Facility that day.  Id.

_____

[2]The Sheriff's Department Policy No. 4.03 sets forth the policy reasons ("help ensure public safety by attempting to ensure that all drivers are properly licensed and all vehicles appear to be in good working order and are equipped with lawfully mandated safety feature") that the Sheriff's Department conducts roadside safety checkpoints, to include the examination procedures for such checkpoints. See Exh. "A", para. 4 (Exh. "1").

[3]See Amended Compl., Exh. "B", pages 23-24 of 27.

As the Mississippi Court of Appeals has recently observed, "it is well settled that routine traffic stops are justifiable because they are only minimally intrusive and the checkpoints themselves are 'very effective' in determining whether drivers are properly licensed." Rogowski v. State, 145 So. 3d 1232, 1235 (Miss. Ct. App. 2014), cert. denied (Miss. 2014) (quoting Dale v. State, 785 So. 2d 1102, 1106 (Miss. Ct. App. 2001).  As the court also noted, "[d]river's licensing and highway safety are interests justifying routine traffic checks." Rogowski, 145 So. 3d at 1235 (citing City of Indianapolis v. Edmond, 531 U.S. 32, 39-40, 121S.Ct. 447, 148 L.Ed.2d 333 (2000); see also Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ("'[q]uestiong of all oncoming traffic at roadblock-type stops' to verify driver's licenses and registrations would be a lawful means [under the Fourth Amendment] of furthering the vital interest in highway safety"); Collins v. Ainsworth, 382 F.3d 529, 537-546 (5th Cir. 2004) (applying Prouse and Edmonds); Jackson v. Epps, 2015W.L.847457 at *14 (S.D. Miss. Feb. 26, 2015) ("there is no question that a safety checkpoint is constitutionally valid").

The evidence reflects that the roadside safety checkpoint was valid under the Fourth Amendment.  The Defendants respectfully submit that the Plaintiff has unearthed no violation of clearly established law.  Furthermore, the Plaintiff wholly failed to identify conduct of any Defendant which may be characterized as less than objectively reasonable.  As a result of Mr. Kasper's own misconduct, he was arrested and taken into custody utilizing an amount of force reasonable and necessary under the circumstances. The Plaintiff cannot come forward with evidence in this case sufficient to overcome each Defendant's entitlement to qualified immunity. Accordingly, they are entitled to qualified immunity as to the entirety of the Plaintiffs' claims under Section 1983.

Further, there is no vicarious liability for supervisory personnel such as Sheriff Sollie under 42 U.S.C. § 1983.  This was reaffirmed by the Supreme Court in the context of a supervisory liability claim in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (there is no vicarious liability under § 1983 or Bivens; the term "supervisory liability" is a "misnomer").  Regarding liability of supervisors, long-established Fifth Circuit precedent requires either personal involvement by an individual defendant in the alleged violation, or the enforcement of some policy or practice resulting in the constitutional deprivation. Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 314 (5th Cir. 1999); Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); Alton v. Texas A & M University, 168 F.3d 196, 200 (5th Cir. 1999).  Stated differently, in a § 1983 civil rights action, a plaintiff must prove the defendant was personally involved in the actions he complains of, or was responsible for the policy or custom giving rise to the constitutional deprivation.  See McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir.1989); Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir.1981); Howell v. Tanner, 650 F.2d 610, 615 (5th Cir.1981), cert. denied, 456 U.S. 918 & 919 (1982); See also Booker v. Koonce, 2 F.3d 114, 116 (5th Cir. 1993) (dismissing respondeat superior claims against City as mere employer of alleged offending officers (citing Monell)); Williams v. Phillips, 101 F.3d 700, 1996 WL661315 at *1 (5th Cir.  1996) (per curiam) (confirming that a supervisory defendant may not be held liable under § 1983 on a theory of vicarious liability including respondent superior, but that personal involvement is an essential element of a civil rights cause of action).

### Heck v. Humphrey

In addition, the Plaintiff's claims constitute an impermissible collateral attack on his 2015 convictions for disorderly conduct and are therefore barred pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed. 2d 383 (1994). Plaintiff's allegations of false arrest,

wrongful detention and confinement, false arrest and false imprisonment, and intentional

infliction of emotional distress question the validity of Plaintiff's 2015 convictions, which he

admits still stand.  However pursuant to the Unites States Supreme Court's decision in Heck v.

Humphrey, because Plaintiff cannot show that his conviction "has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a Federal Court's issuance of a writ of habeas corpus",

his claims are not cognizable under § 1983.  Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364,

2372, 129 L. Ed. 2d 383 (1994).

In Heck, the § 1983 Plaintiff was convicted of involuntary manslaughter in Indiana state

court and sentenced to a 15-year term of imprisonment.  Heck, 114 S. Ct. at 2368.  He filed his §

1983 lawsuit in federal court while his appeal from his conviction was pending in the Indiana

courts, alleging that he had been the victim of a conspiracy by county prosecutors and a police

investigator to destroy exculpatory evidence and to use an illegal  voice identification procedure

at his trial.  Id.  The district court dismissed his § 1983 action on the ground that the issues raised

therein directly implicated the legality of his confinement.  The district court's decision was

timely appealed to the United States Court of Appeals for the Seventh Circuit.  Id.  While his

appeal to the Seventh Circuit was pending, the Indiana Supreme Court affirmed his conviction

for involuntary manslaughter.  Subsequently, the Seventh Circuit affirmed the District Court's

dismissal of his §1983 action.  Heck v. Humphrey, 994 F.2d 355, 257 (7th Cir. 1993), aff'd, 512

U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

Although the United States Supreme Court affirmed the Seventh Circuit's judgment, it

rejected the analysis utilized by the Seventh Circuit.  See Boyd v. Biggers, 31 F.3d 279, 282-83

(5th Cir. 1994) (containing excellent discussion of Supreme Court analysis in Heck v.

Humphrey).  In that regard, the Fifth Circuit observed as follows:

> The Court agreed, however, that Heck could not proceed with his § 1983 action.
> Using the common law tort of malicious prosecution as an analogy to aid in
> interpretation of § 1983, the Court concluded that
>
>> In order to recover damages for allegedly unconstitutional
>> conviction or imprisonment or for other harm caused by actions
>> whose unlawfulness would render a conviction or sentence invalid,
>> a § 1983 plaintiff must prove that the conviction or sentence has
>> been reversed on direct appeal, expunged by executive order,
>> declared invalid by a state tribunal authorized to make such
>> determination, or called into question by a federal court's issuance
>> of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages
>> bearing that relationship to a conviction or sentence that has not
>> been so invalidated is not cognizable under § 1983.
>
> As the Court remarked a little later in the opinion,
>
>> We do not engraft an exhaustion requirement upon § 1983, but
>> rather deny the existence of a cause of action.  Even a prisoner who
>> has fully exhausted available state remedies has no cause of action
>> under § 1983 unless and until the conviction or sentence is
>> reversed, expunged, invalidated, or impunged by the grant of a writ
>> of habeas corpus....[A] § 1983 cause of action for damages
>> attributable to an unconstitutional conviction or sentence does not
>> accrue until the conviction or sentence has been invalidated.

Boyd, 31 F.3d at 282-83 (quoted Heck) (citations omitted) (emphasis added).

Pursuant to Heck, when a complainant brings a § 1983 action seeking damages, as in this

case, the trial court must first ascertain whether a judgment in favor of the plaintiff in the § 1983

action would necessarily imply the invalidity of his conviction or sentence.  Boyd, 31 F.3d at 283

(citing Heck, 114 S. Ct. at 2372).  If such judgment would necessarily imply the invalidity of the

conviction or sentence, the prisoner must show that his conviction has been "reversed, expunged,

invalidated, or impunged by the grant of a writ of habeas corpus" in order to state a claim.  Id. at

283 (quoting Heck, 114 S. Ct. at 2373).  If the § 1983 plaintiff has not satisfied the Heck

requirement, his claims have not matured and he has no cause of action.  See Hudson v. Hughes,

98 F.3d 868, 871-74 (5th Cir. 1996) (dismissing allegations of false arrest and malicious prosecution).

It is undisputed that the plaintiff's claims pertain to his May 24, 2014 arrest. However, the validity of the arrest was confirmed by virtue of Plaintiff's conviction on 2 charges of disorderly conduct. Plaintiff's allegations challenge the validity of his conviction which still stand. His claims are not cognizable under § 1983 or state law and should be dismissed for failure to state a claim.

### State Law Claims: Mississippi Tort Claims Act -- § 11-46-1, et. seq.

To the extent that Plaintiff Kasper seeks to pursue claims under state law, those claims are also barred. Mississippi Code § 11-46-1, <u>et</u>. <u>seq</u>. imposes restrictions upon the Plaintiff as pre-requisites to being entitled to offer evidence to support his claims which are founded on state law. The Mississippi Tort Claims Act ("MTCA") provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise of a suit. Miss. Code Ann. § 11-46-7(1); <u>L. W. v. McComb Separate Municipal School District</u>, 754 So.2d 1136 (Miss. 1999); <u>Lang v. Bay St. Louis/Waveland School District</u>, 746 So.2d 1234 (Miss. 1999). **<u>Any</u>** claim filed against a governmental entity and its employees **must** be brought under this statutory scheme.

The MTCA bars all of Plaintiff's causes of action asserted against Sheriff Deputies Jacob Mathis, Andy Matuszewski, Ruston Russell, William Sollie, Wesley Stephens, and Dylan Anderson, in their individual capacities. There is no personal liability for the individual defendants under the MTCA. Furthermore, to the extent the Plaintiff's claims are outside of the MTCA, they are barred by the statute of limitations.

Pursuant to the MTCA, an individual defendant cannot be held personally liable for acts occurring within the course and scope of his/her employment.  Bridges v. Pearl River Valley Water Supply District, 793 So.2d 584, 590 (Miss. 2001);  Craddock v. Hicks, 314 F.Supp. 2d 648, 654 (N.D. Miss. 2003).  Section 11-46-7(2) is clear in that regard.  Id.  However, Section 11-46-5(2) provides that an employee is not considered to be acting within the scope of employment if the employee's conduct constituted fraud, malice, liable, slander, defamation or any other criminal offense other than traffic violations.  Miss. Code Ann. § 11-46-5(2); Pearl River Valley Water Supply District v. Bridges, 878 So.2d 1013, 1018 (2004); Bridges, 793 So.2d at 590.

Of course in this case, Plaintiff Kasper alleges that all of the individual defendants were "at all time material to the allegations in this Complaint, acting in [each defendant's] capacity as a law enforcement officer and acting under color of state law." See Amended Compl., paras. C-F, I, K. The individual defendants are therefore entitled to dismissal of Plaintiff's state law claims against them in their respective individual capacities.

In the alternative and to the extent that Plaintiff asserts that his state law claim, or some of them are outside of the MTCA, his claims are barred by the application statute of limitations.  As Judge Aycock observed in Woods v. Carroll County, No. 2008WL4191738 at *3 (N.D. Miss. September 8, 2008), the statute of limitations under Mississippi law for certain intentional torts including malicious prosecution, abuse of process, false arrest, assault and battery, excessive use of force and false imprisonment are governed by the one year statute of limitations set forth in the Mississippi Code § 15-1-35.  Id. (citing City of Mound Bayou v. Johnson, 562 So.2d 1212-1218 (Miss. 1990)); Zumwalt v. Jones County Bd, 19 So. 3d 672, 689 (Miss. 2009) (conversion is an intentional tort within meaning of MTCA).  In addition under Mississippi law, actions for the

state law torts of false arrest and false imprisonment accrue at the time of arrest.  Id. (citing City of Mound Bayou, 562 So.2d) at 1217; Parker v. Game & Fish Comm'n, 555 So.2d 725-727 (Miss. 1989)).  Further, state law torts of assault and battery and excessive use of force accrue on the date of the subject incident.  Id. (citing Mound Bayou, 562 So.2d 1217)).

Even if the MTCA did not apply to Plaintiff's state law claims, such claims would be time-barred pursuant to § 15-1-35 and/or § 15-1-49.

### D.  CONCLUSION

Based on the foregoing, the Defendants respectfully submit that they are entitled to judgment as a matter of law as to the entirety of the Plaintiff's claims.  The Plaintiff's claims should be dismissed as legally frivolous and a "strike" imposed under the Prison Litigation Reform Act.  The Defendants request such other and further relief as the Court may deem just and proper under the circumstances.

This the 8th day of August, 2016.

Respectfully submitted,

**SHERIFF WILLIAM SOLLIE, WESLEY STEVENS, RUSTON RUSSELL, JACOB MATHIS, ANDY MATUSZEWSKI AND DYLAN ANDERSON, Defendants**

BY:    /s/ Lee Thaggard
LEE THAGGARD (MSB #9442)
BARRY, THAGGARD, MAY & BAILEY, LLP
Post Office Box 2009
Meridian, MS 39302-2009
(601) 693-2393
thaggard@btmblaw.com

Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, do hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system, which provided notice of such filing to:

Joseph A. Denson
Denson & Associates, PLLC
1004 20th Avenue
Meridian, Mississippi 39302

and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

None.

THIS the 8th day of August, 2016.

/s/Lee Thaggard
LEE THAGGARD